**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**Earl K. H. KIM, Harry I. A. Ah Nee, Chester Hanawahine, Penrod S. Fanene, Catalino Gedarro, and Ralph H. Martin,**
Defendants-Appellants.

No. 24059.

United States Court of Appeals,
Ninth Circuit.

June 18, 1970.

Rehearing Denied Sept. 11, 1970.

and an overall length of 22½ inches which had been made in violation of the provisions of Section 5821(e) of Title 26, United States Code, in violation of Section 5851 of Title 26, United States Code."

Following conviction by a jury, imposition of sentences by the court, and denial of appellants' motion for directed verdict and/or a new trial, appellants filed their appeal in this court.

The district court had jurisdiction under 18 U.S.C. § 3231. This court's jurisdiction is based on 28 U.S.C. §§ 1291 and 1294.

Appellants present the following issues on this appeal:

1. Whether the District Court erred in denying appellants' motion to suppress evidence, and whether the seizure of certain property without warrant was so unreasonable and therefore unconstitutional that the District Court erred in admitting into evidence the property so obtained by the search?

2. Whether the District Court erred in admitting into evidence over objection by appellants certain guns and related paraphernalia which were not the subject of the Indictment and suggested other crimes unrelated to the offense with which appellants were charged?

3. Whether the District Court erred in exceeding its discretionary power by making unwarranted comments upon the testimony to such an extent and in such manner as to invade the province of the jury?

We will consider the issues in the order in which they appear above.

Ernest Y. Yamane, of Bicoy & Yamane, Honolulu, Hawaii, for defendants-appellants.

Robert K. Fukuda, U. S. Atty., Joseph M. Geden, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before JERTBERG, BROWNING and HUFSTEDLER, Circuit Judges.

JERTBERG, Circuit Judge:

Appellants were charged with the offense of violating 26 U.S.C. § 5851, of the National Firearms Act, in that they:

"knowingly did possess a firearm described in 26 United States Code, Section 5848(1), to wit, a U.S. carbine, .30 caliber, M1, Serial No. 3744036, having a barrel length of 11⅝ inches

## I. ORDER DENYING MOTION TO SUPPRESS.

The order of the district court denying appellants' motion to suppress was based upon pretrial evidentiary hearings before the district court, and, by stipulation, upon the transcript of the hearing of a similar motion made by appellants under an earlier and superseded indictment, and upon the transcript of the tes-

timony taken before the Circuit Court of the State of Hawaii on a similar motion made by appellants in that court, in a criminal proceeding against the appellants, on a State charge arising out of the same arrest and search as is involved in the instant case.

The following statement relating to the facts and circumstances surrounding the arrest and search of appellants is taken entirely from appellants' opening brief, as to which the appellee, in its reply brief, accepts with one exception which we will note later:

The firearm in question was found to be in appellants' possession as follows:

On November 22, 1966, a motorcycle officer of the Honolulu Police Department on routine patrol at approximately 9:15 at night "clocked" a motor vehicle containing six men for a speeding violation. After motioning the driver to pull over, the vehicle stopped and the officer "pulled [his] motorcycle to the rear of the vehicle approximately 10 to 15 feet away."

The officer immediately radioed for another motorcycle which he believed to be in the area because "[i]t is normal procedure to call for assistance when there are that many people in the car", and because the officer "had known that [the driver] was what we term an underworld character."

Because the officer did not approach the vehicle, the driver alighted and proceeded toward the officer, who informed him that he had "committed [a] traffic offense"; that he had been stopped for "speeding".

Upon asking for and receiving his operator's license, the officer radioed (again) for a "license check", mentioning the driver's name. Within "approximately three to five minutes," while he was "still writing the citation," a Lieutenant Howell (accompanied by another police officer) arrived in his private automobile, and was informed of the "facts of the case."

Soon the other motorcycle and another police vehicle arrived.

For reasons which he never expressed at the trial, Officer Howell, who knew "each and every one" of the appellants, shined a flashlight into the car and "recognizing the occupants, hailed several of them." He then asked for the vehicle registration and appellant Kim, who had been standing on the sidewalk area, volunteered that he was the owner. Howell's testimony was that:

"He [Kim] then walked back around the front of the car to the left hand side and got into the driver's seat, reached into the glove compartment and fumbled with papers and finally produced the registration. At that point, I was standing to his rear. I shined my flashlight into the front of the car along the floorboard and, at that time, noticed a cardboard box on the floorboard on the extreme right, up against the front seat, under [one of the occupant's] legs."

The box, which was taped with masking tape, and which Officer Howell admitted the contents of which he could not see, contained the firearm which was to become the subject of the Indictment.

Officer Howell then shined his flashlight into the rear of the car where he "noticed the butt of a small gun on the floorboard partially under * * * the front seat", and "partially covered by newspaper." He ordered all of the occupants out of the car, "placed them under arrest for being offensively armed," and made "a search of their persons."

Officer Howell asked that "the wagon" be called. He then retrieved the "gun butt," which proved to be attached to a Mauser automatic pistol, .25 caliber. He "then continued [his] search of the vehicle," and retrieved from under the front seat a Smith and Wesson revolver, .38 caliber.

He then retrieved the cardboard box and upon opening it "discovered the sawed-off rifle."

Thereafter he found a Colt Cobra revolver, .38 caliber in the pocket of a trunk (sic) [trench] coat on the rear seat of the car.

Upon searching the appellants again, Lieutenant Howell recovered a .30 caliber "banana clip" and an Astra revolver, .25 caliber from one of them.

In respect to "STATEMENT OF THE CASE" appearing in appellants' brief, appellee notes in its answer brief that:

"On page four of the defendants' brief the defendants refer to the transcript of the trial and say 'for reasons which he [police officer Howell] never expressed at the trial, officer Howell * * * knew "each and everyone" of the appellants. * * *' Although the reasons were never expressed at the trial, they were expressed in the original motion to suppress and officer Howell testified that he knew the defendants from past experience, from their criminal records and from their reputation."

The record further reveals that officer Howell testified that in the search of the car he found a paper sack containing four wigs. The wigs were never offered or received in evidence.

Three of the appellants testified that at the time the car was stopped by the traffic officer, the six occupants of the car were on a pleasure trip to visit the parents of one of the appellants. All of them testified that they were unaware that the sawed-off shotgun was in the car until it was located by officer Howell. Two of them testified that they were without knowledge that there were any other weapons in the car or on the persons of any of the appellants. One of them testified that he owned the weapon which was removed from the pocket of the trench coat.

Appellants timely moved to suppress as evidence the items of property described above.

The first question presented to us is, whether the warrantless arrest of the appellants by Officer Howell was legal?

We examine the circumstances under which this officer acted. Six men were in the automobile. It was night time. The car had been stopped by a traffic officer for exceeding the speed limit. There is nothing in the record to sustain any inference that the car was stopped on some pretext in order to search the car or to make any investigation of the occupants. When there are several persons in a stopped vehicle, it is normal procedure for a traffic officer to radio for assistance. The driver stepped from the car and the traffic officer recognized him as an "underworld character." Upon arrival at the scene, Officer Howell, a veteran of twenty-six years on the Honolulu Police Force, after talking to the traffic officer, asked for the registration certificate of the car, which is normal police procedure. At that time, Officer Howell was standing to the rear of the automobile. He recognized the occupants of the car and knew of their past criminal records. He flashed his flashlight into the car, which he had a right to do for his own protection if for no other reason. Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, 84, cert. den. 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). Such conduct does not constitute a search. State v. Hanawahine et al., 50 Haw. 461, 443 P.2d 149. Seeing the weapon gave Officer Howell probable cause for believing that a crime was being committed in his presence, to wit: a violation of R.L.H.1955, Section 267–25. The arrest of appellants was, therefore, legal. See Busby v. United States, 296 F.2d 328 (9th Cir. 1961), cert. den. 369 U.S. 876, 82 S.Ct. 1147, 8 L.Ed.2d 278 (1962); Bell v. United States, *supra*; State v. Hanawahine, et al., *supra*.

The next question is, whether the search following the arrest exceeded the permissible scope under the Fourth Amendment, of a search incidental to a lawful arrest?

■ Appellants contend that the search of the automobile following the arrest, and which disclosed the presence in the automobile of the weapon described in the Indictment, exceeded the permissible scope of such search under the principles announced recently in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We believe that the search in the instant case did not exceed the constitutional limits announced in *Chimel*.

The instant search occurred on November 22, 1966. Under the standards prevailing at that time, the search clearly met the requirements laid down in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

The district court properly denied appellants' motion to suppress.

## II. ADMISSION INTO EVIDENCE OF CERTAIN FIREARMS.

■ Without objection on the part of the appellants, except in respect to the Mauser automatic pistol, the Colt Cobra revolver, the Smith & Wesson revolver, and the Astra automatic pistol, there was received in evidence the firearm described in the Indictment, and all items of property described in the Statement of Facts. Appellants objected to the admission into evidence of the four firearms above described on the ground that the same were irrelevant, incompetent, immaterial and prejudicial.

In overruling the objection, the court informed the jury that the appellants were charged in the indictment only with the possession of the .30 caliber sawed-off carbine, and were not charged with any offense relating to any of the other weapons and paraphernalia received into evidence, and that said weapons were received simply to connect up the events leading to the discovery of the cardboard box and its contents, and as bearing upon the intent of the appellants insofar as it concerned the one offense described in the Indictment, and

that he would explain his ruling in more detail at the time of final instructions. In his final instructions the court, *inter alia*, stated:

"Evidence has been introduced that two pistols and two revolvers, and ammunition which fit those guns, were found in the Lincoln along with the sawed-off carbine in the box, the sawed-off carbine charged in the indictment.

"Now, those pistols and those revolvers and the ammunition for them are to be considered by you for limited purposes only, that is, for whatever light they, and their presence at that time and place and under the circumstances then and there, may shed upon the actual or constructive possession of the sawed-off carbine by one or more of the defendants, as charged in the indictment.

"It may also be considered by you in determining whether or not the defendants were on an innocent trip in which they would have had no reason to have knowledge of the fact that the sawed-off carbine was in that cardboard carton, partly exposed under the front seat, between the feet of defendant Fanene.

"Now, not one of these defendants is charged with the crime of possession of a pistol or a revolver. The defendants are not on trial for anything other than knowingly possessing an illegally sawed-off carbine. * * *.

"To repeat, the defendants are not to be convicted simply because there were pistols and revolvers in the car standing alone. The existence of the pistols and revolvers and the circumstances under which they were found may or may not lead to an inference that one, any number or all of the defendants were acting jointly with the knowledge that the sawed-off carbine was in the car between the feet of Fanene in this box. Whether such an inference can and should be drawn is something for you to decide from all of the evidence before you. * * *."

In light of all the circumstances, we find no error in the court's ruling.

### III. THE COURT'S COMMENTS ON THE FACTS.

 During the course of giving final instructions to the jury, the district court made certain comments which appellants construe as invading the province of the jury as the sole arbiter of the facts. This issue is presented for the first time on this appeal, as the record discloses no objection by appellants at the time the remarks were made. Appellants view the remarks in isolation, but when viewed in their proper context with the instructions given, we find no impropriety in such comments. In any event, the district court repeatedly informed the members of the jury that they were the sole and exclusive judges of the facts, and further stated to the jury:

"You notice that I commented on the evidence from time to time. I have a right to under the laws of the United States. Such comments, if I have made any, are only expressions of my opinion as to the facts, and you may disregard them entirely, because you are the judges of the facts.

"During the course of the trial, I occasionally questioned some of the witnesses in order to bring out facts which I didn't think were fully covered. Don't assume that I hold any opinion on the matters to which my questions may have been related. Remember, you, at all times, as jurors, are at liberty to disregard any comments that I make, or any inferences that you might draw from the way in which I say them, in arriving at your own findings as to the facts. You are the judges of the facts, not I."

Appellants' contention is without merit.

The judgments of conviction are affirmed.