**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert Lee BOOKER et al., Defendants-Appellees.**

**No. 71-2024.**

United States Court of Appeals, Sixth Circuit.

May 31, 1972.

Dist., 183 Ark. 1041, 40 S.W.2d 770, 772 (1931) (deed of trust). *But cf.* Selle v. Fayetteville, 207 Ark. 966, 975, 184 S.W.2d 58, 63 (1944).

————◆————

Frank S. Spies, Asst. U. S. Atty., Grand Rapids, Mich., for plaintiff-appellant; John Milanowski, U. S. Atty., Grand Rapids, Mich., on brief.

Bruce W. Neckers, Grand Rapids, Mich. (Court appointed), for defendants-appellees.

Before WEICK and McCREE, Circuit Judges, and FEIKENS,* District Judge.

WEICK, Circuit Judge.

The United States has appealed under 18 U.S.C. § 3731, from an order of the District Court suppressing a sawed-off 12-gauge shotgun and a .22 caliber sawed-off automatic rifle, which the defendants had been charged by information with possessing, in violation of 26 U.S.C. §§ 5861(d), 5845(a) and 5871.

At 4:20 a. m. on July 1, 1971, a Ford station wagon, in which three men, the defendants in this case, were riding, was being operated northerly on U. S. Highway 31, in the State of Michigan, at a speed of from 80 to 85 miles an hour, in a 55-mile zone. Deputy Sheriff Slotman of Ottawa County, was alone in his cruiser, patrolling the highway. When he observed the station wagon, he started to follow it, clocking its speed; he then flashed his lights for the wagon to stop. The wagon veered, and seemed to be out of control, but it pulled over to the side of the road, and stopped, and the Deputy stopped his cruiser behind the wagon.

The Deputy radioed the license number of the car to his headquarters. Logan, the driver of the wagon, got out and walked toward the cruiser. Slotman asked for his driver's license, and Logan produced a traffic ticket from Illinois which apparently authorized the car owner to drive his car until his case was heard and until his license was returned to him. Slotman advised Logan that he was stopping him for speeding.

As Slotman walked along beside the station wagon he shined his flashlight in the back of the wagon and saw in plain view six inches of the barrel of a rifle protruding from beneath a mat in the rear of the wagon. He asked Logan who owned the rifle. One of the passengers in the wagon got out from the other side and said, "The rifle does not work anyway." Slotman asked to see the rifle; the passenger reached in the wagon to get it and Slotman took the rifle from him. As Slotman walked back to his cruiser he slid back the action on the rifle and found a round of ammunition in its chamber. Slotman then radioed for a back up car. He had noticed that the rear license plate on the wagon was attached by wire.

Three police officers arrived, and the three men in the wagon were advised "of the law concerning uncased loaded weapons in the car", and the officers proceeded to search the wagon. The three men stood outside the wagon watching while the search was conducted. The officers found a sawed-off 12-gauge shotgun under the driver's seat, which was loaded with two rounds in the chamber. The search was continued and the officers found a .22 caliber sawed-off rifle under the mat in the rear of the wagon, with a round of ammunition in the chamber. In the glove compartment there were two more rounds of ammunition for the 12-gauge shotgun.

---

* The Honorable John Feikens, Judge of the United States District Court for the Eastern District of Michigan, sitting by designation.

In the spare tire well there was a small green metal box containing what appeared to be burglary tools. Deputy Slotman testified concerning his reasons for the search, that he was concerned for his safety, that he had already found a loaded weapon in the car, that the rear license plate had been wired on the wagon, that the police officers had been having a "lot of trouble in Muskegon with armed robberies involving colored subjects, and at this time [4:20 a. m.]—this was my main concern." The three men in the car were black. The men were then taken to the police station.

■ The District Court was of the view that probable cause did not exist to justify the warrantless search of the station wagon. We disagree. Flashing the flashlight in the rear of the car did not constitute a search of the car. United States v. Kim, 430 F.2d 58, 61 (9th Cir. 1970), and cases therein cited. Six inches of the rifle barrel was in plain view and was subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Since it would not constitute a search for the officer to observe objects in plain view in the automobile in daylight, it ought not to constitute a search for him to flash a light in the car as he was walking past it in the night season. In any event, if it was a search, it was reasonable under the circumstances. Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Violation of the Michigan Conservation Law, § 312.10, Mich.Comp. Laws, is a misdemeanor. It is a felony under federal law to receive or possess a sawed-off shotgun or rifle. 26 U.S.C. §§ 5861(d), 5845(a), and 5871.

The officers could not very well obtain a search warrant at 4:20 o'clock in the morning. If, as claimed by the defendants, probable cause did not exist, the Magistrate would have no authority to issue a warrant. The fact that the three men who occupied the station wagon were standing outside the wagon while the search was conducted, did not indicate that the officers were out of danger, nor that any one of the three men was prevented from reaching into the wagon for a concealed loaded weapon and using it effectively. United States v. Castle, (4th Cir., No. 71–1899, decided Dec. 20, 1971).

In our opinion, considering all of the surrounding facts and circumstances, there was probable cause for the arrest and search, and it was not unreasonable. United States v. Garner, 451 F.2d 167 (6th Cir. 1971); United States v. Barnett, 407 F.2d 1114 (6th Cir. 1969), cert. denied, 395 U.S. 907, 89 S.Ct. 1748, 23 L.Ed.2d 219.

We are also of the view that the search was incident to a lawful arrest. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The search had to be made at the time and place of the arrest in order to be resonable. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

We conclude that the District Court erred in suppressing the weapons. The judgment of the District Court is therefore reversed and the cause is remanded with instructions to deny the motion to suppress.

McCREE, Circuit Judge (concurring).

I concur in the result reached by the court, but I disagree with the determination that flashing the light into the rear of the automobile did not constitute a search. A person seated in a darkened automobile at night has a right to rely upon the privacy afforded by those circumstances.

What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the pub-

lic, may be constitutionally protected. [Citations omitted.]

Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). However, under all the circumstances of this case. I regard the limited invasion of appellants' privacy by the illumination of the automobile's interior as reasonable. *See* Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), in which the Supreme Court stated that:

> . . . in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? [Citations omitted.]