Billy James **ELMORE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17918.

Court of Criminal Appeals of Oklahoma.

June 7, 1973.

Paul D. Brunton, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Daniel J. Gamino, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Billy James Elmore, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–72–116, for the offense of Robbery with Firearms, After Former Conviction of a Felony, his punishment was fixed at one hundred fifty (150) years imprisonment and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial John Zonder testified that on the 17th day of January 1972, he was employed at Grigg's Burger Bar at 6131 East 21st Street in Tulsa. At approximately 10:00 p. m. he answered a knock on the backdoor. A man came in wearing a blue ski mask on his head, with a gun in his hand and stated "This is a hi-jacking." The gunman ordered another employee, James Malilong, into the closet. He ordered Zonder to get the money from the cash register. Zonder took the drawer from the cash register and, at the gunman's direction, placed the money in a white Republic National Bank bag, which he identified as State's Exhibit 2. He next ordered Zonder to open the safe. While

Zonder was attempting to open the safe, the gunman answered the telephone which had been ringing and said, "Yes, this is me." (Tr. 17) The man hung up, telling Zonder to "Better hurry up or somebody is going to get hurt." A customer walked in the front door and the gunman ran out the backdoor. He testified that approximately ninety dollars ($90.00) was taken by the robber.

Custodio Jaime Malilong testified that he was present at the cafe on the evening in question. His testimony did not differ substantially from that of Zonder. After the gunman left the cafe, he called the police.

Officer Charles Sasser testified that at approximately 10:04 p. m. on the evening in question he was patroling in the 3300 block of east 21st Street when he received an armed robbery report on his radio. He started driving toward the scene of the crime and received a description of the gunman. As he approached Yale Avenue, he observed a 1960 Pontiac containing two males coming down the hill from Darlington. The car was traveling approximately thirty miles per hour with a flat rear tire. As the car passed him at a lighted intersection, he observed that the passenger, later identified as the defendant, fit the description he received on the radio. The defendant turned completely around and continued to watch Sasser through the rear window. Sasser made a U-turn and stopped the Pontiac with his red light. He stepped out of the police unit and requested that the two persons get out of the car. When neither occupant moved, he walked up to the vehicle and shined his light inside the car. He observed a box of .22 caliber cartridges on the frontseat between the two men. He further observed a blue ski mask and a white money bag partially stuck under the seat of the passenger. A subsequent check of the money bag, State's Exhibit 2, revealed that it contained ninety-six dollars and thirty-three cents ($96.-33). He directed Officer Johnnie Uhles to search the area of 21st and Darlington for a weapon.

Officer Uhles testified that he interviewed the victims at the Burger Bar and broadcasted the description of the suspect; that after having a conversation with Officer Sasser, he searched an area near 21st and Darlington. He identified State's Exhibit 1 as the weapon he found near the intersection.

For the defense, Jerry Wiginton testified that in January 1972 he owned the Colony Beer Lounge in Tulsa; that he had known the defendant and employed him at the Colony since mid-November 1971. During the course of his employment, the defendant handled sums of money and proved to be a reliable employee. The defendant, co-defendant Danny Woodlee and Danny Lemons were together at his club when he left at approximately 8:45 p. m. on the evening in question.

The defendant testified that he was at the Colony helping Jerry until approximately 9:00 p. m. He asked Danny Woodlee for a ride home. Defendant Woodlee and a third person that defendant refused to name all got into Woodlee's car. When they reached a shopping center on 21st Street, the third person said "Now pull up by the curb, I got some stuff I got to sale." (Tr. 133) The person was gone four or five minutes and came running back to the car with a ski mask on his head, holding a white bag. He hopped into the car and said "Get the hell out of here." (Tr. 134) As they passed the police car, the third person said he wanted to get out of the car and Woodlee stopped and let him out. The police car turned around and stopped them. He denied that one of the tires on Woodlee's car was flat.

■ The first proposition asserts that "the arrest occurred the moment the defendant's were stopped, at that time there was no probable cause for the arrest, and therefore the arrest was illegal and any objects which the officers observed in 'plain view' should be surpressed because the officer did not have the right to be in a position to have that view."

In dealing with a similar proposition in the companion case of Woodlee v. State, Okl.Cr., 505 P.2d 1366 we stated:

"Officer Sasser had received information of an armed robbery and a description of the suspect. He observed a vehicle pulling away from the scene of the crime traveling on a flat tire. He observed that the passenger in the vehicle fit the description of the robber. Upon stopping the vehicle, he asked the occupants to get out. When they did not respond to his command, he approached the vehicle and shined his flashlight inside and observed a cartridge box, a blue ski mask and a white bag in plain view. In United States v. Booker, 461 F.2d 990 (1972), the Sixth Circuit Court stated:

'The District Court was of the view that probable cause did not exist to justify the warrantless search of the station wagon. We disagree. Flashing the flashlight in the rear of the car did not constitute a search of the car. United States v. Kim, 430 F.2d 58, 61 (9th Cir. 1970), and cases therein cited. Six inches of the rifle barrel was in plain view and was subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Since it would not constitute a search for the officer to observe objects in plain view in the automobile in daylight, it ought not to constitute a search for him to flash a light in the car as he was walking past it in the night season. In any event, if it was a search, it was reasonable under the circumstances. Terry v. Ohio, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).'

"This Court has consistently held that where evidence was in plain view the act of a peace officer seeing such items did not constitute a search. See Mallard v. State, Okl.Cr., 490 P.2d 1383 (1971); Cheatham v. State, Okl.Cr., 483 P.2d 1172 (1971); and Beasley v. State, Okl. Cr., 476 P.2d 94 (1970)."

■ The final proposition contends that the punishment rendered was excessive.

We are of the opinion that this proposition is well taken. The record reflects that during the closing argument the assistant district attorney stated:

"If you want to buy what they put on here today, then you walk him out of the courtroom, and when you walk him out of this courtroom give him back his pistol." (Tr. 176)

The assistant district attorney thereupon threw the pistol on the defendant's trial table. We are of the opinion that such actions and statements are highly improper and resulted in a verdict perfected by passion and prejudice. The judgment and sentence is modified to a term of twenty-five (25) years imprisonment and as so modified, the judgment and sentence is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.