LEIGH M. CLARK, Retired Circuit Judge.
This is an appeál from a judgment of conviction and sentence on a jury trial on an indictment charging the defendant with possession of marijuana. The court fixed his punishment at imprisonment for fifteen years.
No question is raised by appellant as to the sufficiency of the evidence to support the verdict of the jury. The only testimony in the case was by witnesses called by the State, whose testimony combined to show that defendant was in possession of marijuana as charged in the indictment. The two officers participating in the arrest of defendant were Montgomery Police Officers R.G. Locklar and Leslie Cybulski, who were on patrol at approximately 8:10 P.M., December 8, 1982. Officer Locklar testified in pertinent part as follows:
“Q. And where did you observe the defendant?
“A. At the intersection of Lower Road and Tolvert.
“Q. Okay. What did you see?
“A. I observed a vehicle blocking the intersection at Lower Road and Tolvert.
“Q. And where was the Defendant when you saw him?
“A. He was sitting in the driver’s side of the car.
“Q. What did you do after you saw the vehicle blocking the intersection?
“A. We stopped to see if his car was giving him trouble, and we were going to help him out if we could.
“Q. And what did you say to him?
“A. Well, we didn’t say anything at that time. As we drove up behind him, he pulled off to the side of the road, and still we wanted to make sure he wasn’t having car trouble.
“Q. Okay. What happened next?
“A. My partner exited the car, and so did Mr. Holmes exit his car — I mean— yes, Mr. Holmes exited his car. And they were talking.
“Q. And who was your partner?
“A. Leslie Cybulski.
“Q. Okay. What did you do while they were talking?
“A. Just as procedure, I just walked up to the side of Mr. Holmes’ car on the driver’s side and looked inside the car. [By shining “his flashlight in the door,” he testified on cross-examination.]
“Q. What did you see?
*383 “A. I observed a half burnt hand-rolled cigarette.
“Q. Could you tell what type of cigarette it was?
“A. It appeared to me to be a marijuana cigarette.

“Q. All right. What did you do after you saw the roach?
“A. We placed the subject under arrest for possession of marijuana.
“Q. What did you do next?
“A. We did a search for transportation purposes. We searched the Defendant.
“Q. Explain to us what you do a search for transportation for.
“A. We search for weapons and that sort of thing. It’s for safety precautions. The reason we search for transportation is for safety precautions. We were looking for weapons, things of that sort.
“Q. When you searched, what did you find?
“A. We found in his sock two more packages of marijuana in manila envelopes.
“Q. Do you recall which sock they were in?
“A. I believe it was in the left sock.”
I.
In the brief of counsel for appellant, the first issue presented is stated as follows:
“THE SEARCH OF APPELLANT’S VEHICLE BY POLICE OFFICERS WHO HAD STOPPED APPELLANT’S VEHICLE TO ASK IF HE WAS EXPERIENCING CAR TROUBLE, WAS A YIO-LATION OF HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURES.”
Counsel for the respective parties apparently agree that if the marijuana cigarette in defendant’s automobile was found there by Officer Locklar in violation of “the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,” defendant was not validly convicted. The attorney for each of the parties on appeal cites a number of cases that tend to support the position of the attorney as to this issue. They agree with each other that, in the absence of a search warrant, the search of the automobile and a seizure of the marijuana cigarette therein would have been a violation of the quoted provision of the Fourth Amendment unless the marijuana cigarette was “in plain view,” which was held in Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973), to be the first of the five exceptions to the Constitutional inhibition against “unreasonable searches and seizures.” The attorneys for the parties are in disagreement as to whether the instant case comes within such exception. The two cases cited by appellant’s attorney are Kinard v. State, 335 So.2d 924 (Ala.1976), and Berryhill v. State, 372 So.2d 355 (Ala. Civ.App.1979).
In Kinard v. State, the facts were, as stated by Justice Bloodworth at 335 So.2d 925:
“Simply stated, the facts are these. Officer Lundy stopped petitioner’s van truck solely for ‘an I.D. check.’ The officer got out, as did petitioner, and they met between the vehicles where petitioner showed the officer his driver’s license. Whereupon, Officer Lundy walked to the passenger’s side of the van, opened the door, shined his flashlight in the front of the van and saw a celophane bag, in the ashtray, with ‘some small pink pills’ in it. Along with another officer, Lundy took the celophane bag out of the ash tray, reached under the dash, and took out a ‘couple of prescription bottles’ with ‘some pills’ in it, other celophane bags of pills, and 'some marijuana.’ Petitioner was arrested and charged with possession of marijuana for personal use. He was convicted of this charge in this case.”
It is to be noted that in Kinard v. State, there was an opening of the door of the van by the officer before there was any shining of the flashlight into the interior of *384 the van, which distinguishes that case from the instant one, in which there was no physical disturbance of, or physical entry into, the motor vehicle until after defendant was arrested and searched and some marijuana found in one of his socks. Ber-ryhill v. State, supra, is also distinguishable from the instant case, in that in an opinion by Presiding Judge Wright, the Court said, at 372 So.2d 357:
“We are unable to see a basis for application of the ‘plain view’ exception in this case. First, the disclosure of contraband in a closed and locked van by shining a flashlight through an aperture the width of a penny cannot be classified as ‘plain view.’ Such disclosure was in fact a result of a search. Second, we have already said that there was no legal justification for stopping the vehicle nor for the intrusion into a closed and locked van by shining a flash light through a small crack in the door....”
Some Alabama cases are cited by the attorney for appellee that are as close as, if not closer to, the point here involved as the cases cited by attorney for appellant. However, in none of the cases cited by either is the question involved as to whether the conduct of Officer Locklar in shining his flashlight into the automobile and observing the marijuana cigarette therein constituted a search. We look elsewhere for an answer to that question. We find it in United States v. Kim, 430 F.2d 58, 61 (9th Cir.1970), as follows:
“We examine the circumstances under which this officer acted. Six men were in the automobile. It was night time. The car had been stopped by a traffic officer for exceeding the speed limit. There is nothing in the record to sustain any inference that the car was stopped on some pretext in order to search the car or to make any investigation of the occupants. When there are several persons in a stopped vehicle, it is normal procedure for a traffic officer to radio for assistance. The driver stepped from the car and the traffic officer recognized him as an ‘underworld character.’ Upon arrival at the scene, Officer Howell, a veteran of twenty-six years on the Honolulu Police Force, after talking to the traffic officer, asked for the registration certificate of the car, which is normal police procedure. At that time, Officer Howell was standing to the rear of the automobile. He recognized the occupants of the car and knew of their past criminal records. He flashed his flashlight into the car, which he had a right to do for his own protection if for no other reason. Bell v. United States, 102 U.S. App.D.C. 383, 254 F.2d 82, 84, cert. den. 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958). Such conduct does not constitute a search. State v. Hanawahine, et al., 50 Haw. 461, 443 P.2d 149....”
For the same reason, we conclude that the conduct complained of did not constitute a violation of defendant’s right to be free from unreasonable searches and seizures and that appellant’s first issue is not well taken.
II.
By the second issue presented in brief of counsel for appellant, the contention is made that the trial court was in error in sentencing defendant to imprisonment for fifteen years, in that the said term constituted an invalid enhancement of a term of ten years, which had been imposed by the trial court for the identical crime, on an occasion when defendant appeared before the court with counsel at a hearing of defendant’s plea of guilty, at which the following occurred:
“THE COURT: On the basis of your presentence report and the nature of the offense in this case, Mr. Holmes, it will be the Order of the Court that you be sentenced to the custody of the Commissioner of the Department of Corrections for a period of ten years in this case. There is a minimum sentence that the Court can impose in this case, but I didn’t think it was warranted in this case. “MR. RIGGS [Defendant’s attorney]: Judge, we did have an agreement with the District Attorney that a recommendation would be made as to a split sentence. *385 If the Court does not see fit to go along with that recommendation, then we will move for leave to withdraw our plea of guilty.”
The transcript of the proceedings shows that further discussion took place between the trial judge and defendant’s attorney, in which defendant’s attorney stated, “But we will ask the Court and move at this time to be allowed to withdraw the plea of guilty” and the trial judge stated, “Well, you have got the right to withdraw your guilty plea,” and the particular hearing ended as follows:
“MR. RIGGS: Judge, I certainly don’t want to waste the Court’s time by continuing to disagree, but—
“THE COURT: That’s all right, that’s what lawyers are for, to disagree with judges, I reckon; I don’t know.
“Well, we’ll reset it for trial.”
From the foregoing quotation from the transcript, it is to be noted that defendant was allowed to withdraw his plea of guilty and that no judgment of sentence was ever entered for the crime involved in the instant case until after the conclusion of the trial of the case which resulted in the judgment of conviction and sentence to imprisonment for fifteen years. In the light of the transcript of the proceedings as summarized, we find that there is no factual basis for any contention by appellant that by the sentence imposed after the trial of the case there was an enhancement of any previous sentence of the court for the same crime. Any issue presented by the purported second issue contained in brief of counsel for the appellant is not well taken.
III.
The final issue presented in the brief of counsel for appellant is stated as follows:
“A 15 YEAR SENTENCE FOR THE POSSESSION OF 4.1 GRAMS OF MARIJUANA CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.”
Appellant’s attorney is correct in stating that the fifteen-year sentence was the maximum sentence allowed by law for possession of marijuana, in the absence of any previous felony convictions. Appellant fails to show, however, that there was any abuse of authority vested in the trial court to fix the punishment within the range determined by statutory authority. Moreover, it should be shown that the trial judge took into consideration, as he should have, the presentence report, to which the trial judge referred, by stating, “His reputation in dealing in drugs preceded him to this Court.” However severe the punishment may have been, we are convinced that there was no abuse of discretion on the part of the trial court in imposing it.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.