STATE OF HAWAII, Plaintiff-Appellant, *v.* ROBERT KAPOI, Defendant-Appellee

NO. 7304

(CR. NO. 5309)

DECEMBER 17, 1981

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The legality of a warrantless seizure of a handgun from an automobile parked on a public street is at issue in this appeal by the State of Hawaii from an order of the Circuit Court of the Second Circuit suppressing the weapon as evidence in the prosecution of Defendant-appellee Robert Kapoi for an alleged violation of HRS § 134-7, felon in possession of a firearm. As a review of the circumstances leading to the seizure convinces us that the circuit court erred in suppressing the evidence, we vacate the order and remand the case for further proceedings.

I.

At about 1:00 a.m. on May 23, 1978, Officer Chong Kee of the Maui Police Department was dispatched to quell a reported disturbance at the Hale Kukui Hotel in Wailuku. Upon arrival, he was informed by the manager of the hotel that Defendant-appellee Robert Kapoi (hereafter defendant or Robert Kapoi) was causing a disturbance but was ignoring repeated requests to leave the premises. The officer was then led to the rear of the hotel where he observed an argument in progress between Robert Kapoi and a woman. Officer Chong Kee knew both participants in the dispute. The officer told Robert Kapoi that he should quit the premises, but the plea was ignored. And when further requests were of no avail, the officer arrested the defendant and conducted the customary quick search of the defendant's person for weapons, finding none. Robert Kapoi was then transported to the Wailuku Police Station and booked for an alleged breach of HRS § 708-815, simple trespass, a "violation" under the foregoing Penal Code provision.

Before the booking process was completed, Officer Chong Kee received a telephone call from the woman who had been involved in the altercation at the hotel. She informed him that the defendant

had been carrying a handgun earlier; she also expressed a fear of Robert Kapoi and the possible harm that might befall her upon his release. Since the pat-down at the time of arrest had uncovered no weapon, the officer had reason to believe the gun might be found at or near the scene of the arrest, possibly in defendant's vehicle which the officer had spotted on Vineyard Street near the Hale Kukui Hotel while on his earlier mission.

Proceeding to the parked vehicle, he surveyed its interior with the aid of a flashlight and saw what appeared to be the butt end of a handgun protruding from a holster-type gun case on the floor of the passenger compartment. He therefore backtracked to the police station for the necessary key, which was then in the custody of the police department due to defendant's detention. The officer then returned to the vehicle, opened a locked door, seized the handgun, and drove the vehicle back to the station, ostensibly for safekeeping pending defendant's release from custody. The officer there learned his supervisor had set bail for defendant's release pending trial at $75, but that defendant remained in custody because of his inability to post the required bail.

Thereupon, the defendant, who had been convicted of a felony previously, was charged with a violation of HRS § 134-7.[1] Subsequent to the return of an indictment by the Grand Jury, defendant moved to suppress the gun as evidence on grounds that the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 4, 5, and 9 of the State Constitution had been breached in the relevant seizure. His primary thesis was that the seized firearm was subject to exclusion from evidence as "a fruit of the poisonous tree."[2] The circuit court grant-

---

[1] In 1978 HRS § 134-7, since amended, read in relevant part:

(b) No person who has been convicted in this State or elsewhere, of having committed a felony, or of the illegal use, possession, or sale of any drug, shall own, or have in his possession, or under his control any firearm or ammunition therefor.

(c) Any person violating this section shall be guilty of a class c felony.

[2] Defendant's memorandum filed in the circuit court in support of the motion to suppress evidence summarized his contentions as follows:

Clearly, the search of Defendant's automobile without a warrant was the result of illegal actions on the part of the police in several respects. First, the initial arrest made by Officer Chong Kee was without authority of law and, second, continued

ed the motion after a hearing, and the State appeals from the pre-trial order, as authorized by HRS § 641-13(7).

## II.

The State maintains the circuit court's holdings relative to the invalidity of the defendant's arrest and detention, implicit in the court's suppression order, are clearly erroneous. It argues (1) there is ample statutory authority supporting the arrest of a person for an alleged "violation," (2) the setting of bail at $75 under the circumstances involved was not unreasonable, and (3) the defendant's detention because of his inability to post bail in the required amount did not deprive him of liberty without due process. Hence, it contends that defendant's invocation of the "fruit of the poisonous tree" doctrine enunciated in *Wong Sun v. United States, supra,* and reiterated in *State v. Kitashiro, supra,* should be dismissed as groundless. We agree, for we see nothing about the initial arrest and subsequent detention of defendant for the putative "violation" that could be considered statutorily or constitutionally infirm.

## A.

Defendant's argument with regard to the invalidity of his arrest is that simple trespass, deemed a "violation" by the Penal Code,[3] is not a "crime"; consequently there is no statutory authority to arrest a

---

detention of Defendant in lieu of bail in the amount of $75.00 when Defendant had $44.00 available constituted a deprivation of Defendant's liberty without due process of law. The police search and subsequent seizure of items from Defendant's automobile were the direct result of his illegal arrest and his illegal detention after his arrest. The items recovered by the police should therefore be suppressed for use as evidence as being seized in violation of defendant's constitutional rights to be free from unreasonable search and seizure, for the reason that the search was the direct result of illegal actions of the State. *(State v. Kitashiro,* 48 Haw. 204, 397 P.2d 558 [1964]; *Wong Sun v. United States,* 371 U.S. 471 [1963]).

[3] HRS § 708-815 reads:

Simple trespass. (1) A person commits the offense of simple trespass if he knowingly enters or remains unlawfully in or upon premises.

(2) Simple trespass is a violation.

person for the commission of the offense. Pre-penal code law, he states, only recognized felonies and misdemeanors as crimes or offenses; so the statutory authorization for arrests was necessarily coextensive therewith. And when the Penal Code established a new class of noncriminal offenses called "violations," the scope of the law governing arrests, he claims, was not expanded to cover these new offenses. He purports to find support for the foregoing proposition in the abortive attempt in 1975 to amend the provisions of HRS § 708-3, subsequently renumbered as HRS § 803-3.[4]

HRS § 803-3 permits the warrantless arrest of a person who is in the act of committing a crime by "any person present." It presumably sanctions "citizen's arrests," an archaic process of common law origin[5] which has been part of our statutory law of arrests since 1869.[6] However, as the State notes, it is HRS § 803-5 rather than § 803-3 that specifically authorizes warrantless arrests by police officers. And § 803-5 must be read in conjunction with HRS § 803-6, for the latter sets forth the proper procedure for arrests, with or without warrants.

---

[4] The language of HRS § 708-3, now renumbered as HRS § 803-3, has been a part of the laws of Hawaii since the adoption of the Penal Code of 1869. It reads:

Anyone in the act of committing a crime, may be arrested by any person present, without a warrant.

Defendant calls our attention to the fate of S. B. No. 514, which would have amended the pertinent section, in the legislative session of 1975. The bill as introduced had a purpose of adding the words "or violation" after "crime." Its next draft, S. B. No. 514, S. D. 1, which passed Third Reading in the Senate, deleted the word "crime" and substituted "offense" instead. In the House, the Committee on Judiciary further amended the bill to specifically permit arrests for Penal Code and other violations. S. B. No. 514, S. D. 1, H. D. 1, was further amended on the floor of the House to permit such arrests by "any policeman present," rather than "any person present." The measure was subsequently recommitted to the Judiciary Committee after lengthy and confusing floor debate. See H. B. No. 514, S. D. 1, H. D. 1, H. D. 2, and 1975 House Journal, at 651-54. It did not re-emerge from committee. While the last House draft would have explicitly allowed police officers to arrest persons for "violations," its failure of passage was of no consequence where arrests by police officers are concerned for reasons stated above.

[5] See M. C. Bassiouni, *Citizen's Arrest, The Law of Arrest, Search, and Seizure for Private Citizens and Private Police,* 22 and Appendix A, at 88 (1977); *see also* W. Blackstone, *Commentaries* 872 (Gavit ed. 1941).

[6] Penal Code of 1869, Chapter XLIX, § 3.

HRS § 803-5 as it read in 1978 approved the warrantless arrest of a person by a law enforcement officer when circumstances gave rise to a reasonable suspicion that the person had committed an offense.[7] That the provision implicitly sanctioned a warrantless arrest for an offense committed in the officer's presence was clear also. In either case, the procedure to be followed was that prescribed by HRS § 803-6. Formerly, § 803-6 contained no reference to the classes of offenses to which the process was applicable.[8] The section was amended in 1975 to specifically authorize the optional use of a citation by the police in lieu of an arrest where the offense involved is "a misdemeanor, petty misdemeanor or violation."[9] A legislative

---

[7] Prior to 1980, HRS § 803-5 read:

By policeman without warrant. Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense.

The foregoing language clearly implied that warrantless arrests were authorized for offenses committed in an officer's presence. The section was amended in 1980 and 1981, and it now expressly permits warrantless arrests on probable cause for "any offense, whether [committed] in . . . [an] officer's presence or otherwise." The restriction that such arrests were permissible in a "seaport or town" was also removed in 1980. See S.L.H. 1980, c. 105 and S.L.H. 1981, c.186.

[8] Before its amendment in 1975, HRS § 803-6 read:

Arrest, how made. (a) At or before the time of making an arrest, the person shall declare that he is an officer of justice, if such is the case. If he has a warrant he should show it; or if he makes the arrest without warrant in any of the cases in which it is authorized by law, he should give the party arrested clearly to understand for what cause he undertakes to make the arrest, and shall require him to submit and be taken to the police station or judge. This done, the arrest is complete.

[9] S.L.H. 1975, c. 64, added new language to HRS § 803-6; the new language provided in pertinent part:

(b) In any case in which it is lawful for a police officer to arrest a person without a warrant for a misdemeanor, petty misdemeanor or violation, he may, but need not, issue a citation in lieu of the requirements of (a), if he finds and is reasonably satisfied that the person:
    (1) Is a resident of the State of Hawaii;
    (2) Will appear in court at the time designated;
    (3) Has no outstanding arrest warrants which would justify his detention or give indication that he might fail to appear in court, and
    (4) That the offense is of such nature that there will be no further police contact on or about the date in question, or in the immediate future.
The foregoing language is now codified as HRS § 803-6(b).

committee report accompanying the enacted bill, S. B. No. 512, stated its purpose and intent in these terms:

> The purpose of this bill is to permit the use of a citation in lieu of physical arrest when it is lawful for a police officer to arrest a person without a warrant for a misdemeanor, petty misdemeanor or violation.
>
> This bill would provide for an optional use of the citation in lieu of arrest. *The police officer could still make a physical arrest if the situation necessitated such an action.*

Hse. Stand. Comm. Rep. No. 712, in 1975 House Journal, at 1303 (emphasis added). Thus, there is no reason to conclude warrantless arrests for "violations" are proscribed. And as the conduct giving rise to the putative offense consisted of the defendant's involvement in a disturbance and an obstinate refusal to remove himself from the scene that continued after the officer's arrival, we find the arrest was a reasonable law officer's response to the situation, though the offense was one of simple trespass.

### B.

Defendant further claims he was unlawfully detained because bail to effect his release from custody pending trial of the minor offense was set at $75 with full knowledge that he had only $44 on his person when arrested. Since the arrest and subsequent restraint led to the seizure of the handgun, he contends its use as evidence was properly suppressible. We cannot agree, for we do not find that he was compelled to give excessive bail.

A defendant charged with a minor offense unquestionably has a right to be free pending trial. But his freedom following arrest may nevertheless be conditioned upon giving bail in a modest sum reasonably calculated to assure his presence at trial. HRS §§ 804-1, 804-3, and 804-4. The fixing of bail subsequent to Robert Kapoi's arrest for the alleged "violation" was a matter within the discretion of the Chief of Police of the County of Maui or his designee. HRS §§ 804-5 and 804-9. Hence, the question here is whether there was an abuse of discretion because the amount of security requested of defendant was excessive under the circumstances.

Defendant argues the bail set by the police was neither commensurate with possible punishment for the offense nor related to his

pecuniary circumstances. *See* HRS § 804-9. He contends bail in the sum of $75 for a "violation" when the police found only $44 on him was excessive and could only have been calculated to deprive him of liberty without due process and to facilitate the seizure of the handgun. Though the foregoing thesis is not without appeal, it lacks evidentiary and legal support.

The maximum assessable against a defendant upon conviction of a "violation" is a $500 fine. HRS § 706-640(4). When defendant's bail is measured against the maximum fine, we cannot say the security demanded was inappropriate. Nor can we conclude the setting of bail at $75 with knowledge that it was beyond Robert Kapoi's instant ability to post bail for his release from custody rendered it excessive. For the money a defendant may have with him when arrested is seldom indicative of his pecuniary resources; it may generally be assumed that they exceed what he has on his person at the moment. Moreover, primary reliance on the factor of money found on an offender's person in fixing bail would be inimical to the purpose and function of bail as offenders are often impecunious when arrested. No abuse of discretion has been demonstrated.

### III.

Having decided that the arrest and detention of defendant for simple trespass did not taint the evidence, we now focus on its seizure.

The State views the pertinent seizure in terms of the so-called "automobile exception" to the search warrant requirement whose genesis may be traced to *Carroll v. United States,* 267 U.S. 132 (1925), and maintains the seizure was valid. The defendant answers with axioms we have endorsed, *i.e.,* "each case of search and seizure without a warrant must turn on its own facts," *State v. Kaluna,* 55 Haw. 361, 371-72, 520 P.2d 51, 60 (1974), a warrantless search is "per se unreasonable unless shown to fall within a specific exception to the warrant requirement of the Fourth Amendment," *State v. Patterson,* 58 Haw. 462, 467, 571 P.2d 745, 748 (1977), and "the mere fact that the officer may . . . [possess] probable cause sufficient to support the issuance of a search warrant . . . [does] not authorize him to engage in a warrantless search." *State v. Kaaheena,* 59 Haw. 23, 31, 575 P.2d 462, 468 (1978). He reminds us the "automobile excep-

tion" is premised upon probable cause and exigent circumstances, and denies the presence of a requisite exigency. We do not regard the word "automobile" as a "talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461-62 (1971). But our analysis nonetheless leads to a conclusion that the circumstances justified the warrantless seizure of the handgun here.

## A.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is protected by the Fourth Amendment of the federal constitution and Article I, § 7 of the State Constitution. But the foregoing constitutional provisions do not regulate law enforcement practices unless they constitute "searches" or "seizures," for the crucial words are terms of limitation. 1 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 2.1, at 221 (1978); *see also* Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L. Rev. 349, 356 (1974).[10] And while implications of a search are inherent in any quest for evidence by the police, no one has ever suggested that every instance of such seeking is a "search" in the constitutional sense. 1 W. LaFave, *supra,* at 223. "For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See *Lewis v. United States,* 385 U.S. 206, 210; *United States v. Lee,* 274 U.S. 559, 563. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. See *Rios v. United States,* 364 U.S. 253; *Ex parte Jackson,* 96 U.S. 727, 733." *Katz v. United States,* 389 U.S. 347, 351-52 (1967).

---

[10] Professor Amsterdam's statement in this regard reads as follows:

The words "searches and seizures" and the words "persons, houses, papers, and effects" are terms of limitation. Law enforcement practices are not required by the fourth amendment to be reasonable unless they are either "searches" or "seizures." Similarly, "searches" and "seizures" are not regulated by the fourth amendment except insofar as they bear the requisite relationship to "persons, houses, papers, and effects."

Amsterdam, *supra,* 58 Minn. L. Rev. at 356 (footnotes omitted).

Guided by these precepts, we have held that where the object observed by the police is in "open view,"[11] it "is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution." *State v. Kaaheena, supra,* 59 Haw. at 29, 575 P.2d at 467; *State v. Stachler,* 58 Haw. 412, 417-18, 570 P.2d 1323, 1327 (1977). Here, the police officer saw what appeared to be a handgun in a holster on the floor of defendant's vehicle from a vantage point on a public street. He was "on the outside looking inside to that which . . . [was] knowingly exposed to the public." *State v. Kaaheena, supra,* 59 Haw. at 29, 575 P.2d at 467. Hence, his observation of the weapon was not subject to constitutional considerations. Furthermore, the fact that the visual inspection was aided by a flashlight did not convert the scan of the vehicle's interior into a constitutionally regulated "search." *State v. Haili,* 63 Haw. 553, 555, 632 P.2d 1064, 1065 (1981); *State v. Hanawahine,* 50 Haw. 461, 466, 443 P.2d 149, 152 (1968). *See also United States v. Booker,* 461 F.2d 990, 992 (6th Cir. 1972); *United States v. Kim,* 430 F.2d 58, 61 (9th Cir. 1970); *State v. Stone,* 294 A.2d 683 (Me. 1972); *State v. Riley,* 240 Or. 521, 523, 402 P.2d 741, 743 (1965).

The sighting of the handgun from his public vantage point gave the officer cause to believe a crime probably had been committed; the presence of the firearm on the floor of the vehicle rendered it

---

[11] In State v. Kaaheena, *supra,* we distinguished an "open view" from a "plain view," stating in part:

The "open view" doctrine is distinguishable from the visually similar, but legally distinct, "plain view" doctrine. *Scales v. State,* 13 Md. App. 474, 478 n.1, 284 A.2d 45, 47 n.1 (1971). In the "plain view" situation "the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy." *State v. Stachler, supra* at 1327 (emphasis in original). The officer has already intruded, and, if his intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible. *State v. Stachler, supra, citing Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *Harris v. United States,* 390 U.S. 234 (1968).

In the "open view" situation, however, the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public. *See* Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047, 1096, 1097 (1975).

59 Haw. at 28-29; 575 P.2d at 466-67 (footnote omitted).

likely that either HRS § 134-6 or HRS § 134-51[12] had been breached by the car owner. But even the "open view" of possible contraband, without more, furnished no basis for its seizure without a warrant. For "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' " *Coolidge v. New Hampshire, supra,* 403 U.S. at 468; *State v. Kaaheena, supra,* 59 Haw. at 28-29 n.5, 575 P.2d at 466-67 n.5.[13] Thus, we are compelled to examine the circumstances in which the officer found himself to determine

---

[12] HRS § 134-6 reads:

Place to keep firearms; loaded firearms, when prohibited. Except as provided in sections 134-5 and 134-9, the possession of all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn, but it shall be lawful to carry firearms or ammunition, or both, in a wrapper or other suitable container from the place of purchase to the purchaser's home, place of business, or place of sojourn, or between these places upon change of place of business, abode, or sojourn, or between these places and a place of repair or a target range.

It shall be unlawful for any person to have in his possession or to carry on any public highway any firearm loaded with ammunition; provided that the provisions of this paragraph shall not apply to any person who has in his possession or carries a pistol or revolver and ammunition therefor in accordance with a license or permit issued, as provided in section 134-9.

Any person who violates any provision of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

and HRS § 134-51 reads:

Carrying deadly weapons; penalty. Any person not authorized by law, who carries concealed upon his person or within any vehicle used or occupied by him, or who is found armed with any dirk, dagger, blackjack, slug shot, billy, metal knuckles, pistol, or other deadly or dangerous weapon, shall be fined not more than $250, or imprisoned not more than one year, or both. Any such person may be immediately arrested without warrant by any sheriff, policeman, or other officer or person. Any weapon, above enumerated, shall, upon conviction of the one carrying or possessing same under this section, be summarily destroyed by the chief of police or sheriff.

[13] Automobiles are "effects" under the Fourth Amendment and seizures of evidence found therein are subject to the constitutional standard of reasonableness. United States v. Chadwick, 433 U.S. 1, 12 (1977). But the Supreme Court "has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts." *Id.*

We are concerned here with evidence that was in "open view," but in defendant's vehicle. What we have called an "open view" has been characterized as a "pre-intrusive open view" by a jurist we have previously quoted, and his delineation of the constitutional requirements relative to the seizure of evidence discovered through a "pre-intrusive open view" is as follows:

A very different constitutional situation is presented in the case of the pre-intrusive open view. The policeman there is like a little boy with his nose pressed

whether the exigencies of the moment were such as to sustain his decision to seize the gun without a judge's concurrence. *State v. Elliott,* 61 Haw. 492, 497, 605 P.2d 930, 934 (1980).

### B.

"[T]he term 'exigent circumstances' is incapable of precise definition," *State v. Elliott, supra,* 61 Haw. at 495-96, 605 P.2d at 933. But where the proffered justification for a warrantless seizure of evidence from an automobile is the urgency involved, at the least there must "be a showing that . . . the police had reason to believe that because of the car's mobility or exposure, there was a foreseeable risk that it might be moved or that the evidence which it contained might be removed or destroyed before a warrant could be obtained. *United States v. Connolly,* 479 F.2d 930 (9th Cir. 1973), *cert. denied* 414 U.S. 897." *State v. Elliott, supra,* 61 Haw. at 496, 605 P.2d at 933. A review of the relevant circumstances leads us to conclude there was reason for the police officer to believe they were indeed exigent.

Looking into a parked vehicle on a public street in an area of Wailuku he considered a "trouble spot" at approximately 2:00 a.m. on May 23, 1978, the officer detected possible contraband. Shortly thereafter, he decided to sequester the firearm to preserve it as evidence, although he had not secured judicial authorization for its appropriation. A warrant permitting seizure probably could not have been obtained until daybreak. Since there were only a few police officers then on duty in the Wailuku area, the officer did not deem it feasible to have a guard posted over the vehicle pending the issuance of a warrant. He therefore took it upon himself to execute a warrantless seizure of the evidence, using a key taken from the defendant earlier.[14] But, there was cause for him to think an emer-

---

eagerly against the windowpane of the bakery. The cookie is in plain view, but he still needs a nickel. If the bakery is realty, the nickel needs be a search warrant. If the bakery is on wheels, the nickel may be the exigency of the moment.
Moylan, *supra,* 26 Mercer L. Rev. at 1098.

[14] That the seizure was effected with the aid of a key seized from defendant in the course of his earlier arrest did not affect the validity of the seizure. United States v. Gaultney, 581 F.2d 1137, 1139 (5th Cir. 1978), *cert. denied,* 446 U.S. 907 (1980); United States v. Cepulonis, 530 F.2d 238, 241 (1st Cir.), *cert. denied,* 426 U.S. 922 (1976).

gency calling for such action was at hand.

The car was exposed to public view; there was a foreseeable risk that the evidence it sheltered might be removed before a warrant could be sought some hours later. Moreover, the object in question was a firearm likely to draw the attention of possible intruders in a neighborhood considered a "trouble spot" by the police. So the threat to public safety engendered by the situation also causes us to consider the officer's actions reasonable. *State v. Bennett*, 62 Haw. 59, 65, 610 P.2d 502, 506 (1980). *Cf. Cady v. Dombrowski*, 413 U.S. 433, 447 (1973) ("concern for the safety of the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle" justified a warrantless search for the firearm).

As the requisite probable cause and exigent circumstances have been demonstrated, we conclude the seizure at issue did not breach constitutional guarantees against unreasonable searches and seizures. The order suppressing the handgun as evidence is vacated and the case is remanded to the circuit court for further proceedings.

*John E. Tam (James B. Takayesu* on opening brief), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*Melvyn T. Yoshii (Mason, Yoshii & Scott,* of counsel) for defendant-appellee.

## DISSENTING OPINION OF LUM, J.

The majority today upholds the warrantless seizure of a handgun from a car parked on a public street at 2:00 a.m. as reasonable and therefore not violative of the fourth amendment's proscription against unreasonable searches and seizures. A review of the pertinent facts and controlling case law, however, convinces me that the requisite exigent circumstances justifying abrogation of the fourth amendment's warrant requirement were not present on the night in question. I therefore respectfully dissent from this part of its opinion.

The United States Supreme Court, interpreting the fourth amendment in *Camara v. Municipal Court*, 387 U.S. 523 (1967), clearly stated that "except in certain carefully defined classes of

cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* at 528-29. One of these "carefully defined classes of cases" is the exigent circumstances exception to the warrant requirement as applied to automobiles. This exception, first articulated in *Carroll v. United States,* 267 U.S. 132 (1925), evolved from the recognition that the automobile's inherent mobility and exposure increased the risk that an implicated vehicle and its contents may flee the jurisdiction before a warrant to secure the automobile or to seize its contents could be obtained. *See generally* Williamson, *The Supreme Court, Warrantless Searches, and Exigent Circumstances,* 31 Okla. L. Rev. 110, 128-38 (1978).

Since *Carroll,* numerous United States Supreme Court and Hawaii cases have developed and refined the exigent circumstances exception as applied to automobiles as different factual situations presented new opportunities to construe and apply the exception. *See, e.g., Coolidge v. New Hampshire,* 403 U.S. 443 (1971); *Chambers v. Maroney,* 399 U.S. 42 (1970); *State v. Agnasan,* 62 Haw. 252, 614 P.2d 393 (1980); *State v. Elliott,* 61 Haw. 492, 605 P.2d 930 (1980). And while, as the majority notes, the Supreme Court in these subsequent cases "has recognized significant differences between motor vehicles and other property which permit warrantless searches of automobiles in circumstances in which warrantless searches would not be reasonable in other contexts," *United States v. Chadwick,* 433 U.S. 1, 12 (1977), the Supreme Court has also cautioned that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire, supra* at 461-62. The exigent circumstances exception, as applied to this particular factual pattern, continues to maintain its justification on the presence of truly exigent circumstances caused by the fleeting nature of the target, which I find from the record were absent in the present case.

The majority invokes the language of *United States v. Connolly,* 479 F.2d 930 (9th Cir. 1973), *cert. denied,* 414 U.S. 897, to set the present standard that must be met in order for a case to fall under the exigent circumstances exception as applied to automobiles. The court of appeals in *Connolly,* construing the exception, required at a minimum a showing "that at the time of the warrantless search the officers had reason to believe that the mobility or exposure of the car

made it impracticable to seek a warrant." *Id.* at 935; *State v. Elliott, supra* at 496, 605 P.2d at 933. This belief, however, may not be merely "a generalized fear that an unknown person will move the vehicle or destroy evidence in it." *Connolly, supra* at 935, citing *Coolidge v. New Hampshire, supra.* The police must be able to "articulate specific grounds for believing that a known accomplice, acquaintance, or, in unusual cases such as United States v. Cohn, [472 F.2d 290 (9th Cir. 1973)],[1] an unknown person passing by is likely to move the vehicle or destroy evidence within it before a warrant could be secured," *id.*, before a warrantless search based on probable cause will be permitted. *See State v. Dorson,* 62 Haw. 377, 388, 615 P.2d 740, 748 (1980); *State v. Dias,* 62 Haw. 52, 57, 609 P.2d 637, 640-41 (1980).

The Ninth Circuit Court of Appeals in *Connolly* upheld the warrantless search of an automobile conducted subsequent to defendant's arrest. Government agents, believing defendant to be transporting cocaine in his car, arrested defendant after he parked his vehicle on a public street. A warrantless search of the car ensued, revealing a paper bag containing four ounces of cocaine which had been hidden under the front seat. Defendant had had no prior knowledge that he was under investigation which might have prompted him to dispose of the evidence earlier. Once under arrest, defendant had no access to his car. Relying primarily on *Coolidge v. New Hampshire, supra,*[2] however, the court held that the requisite

---

[1] The court of appeals in *United States v. Cohn, supra,* upheld a warrantless search of an automobile as reasonable under the exigent circumstances exception, on the grounds that (1) the car had been seen at the home of a known drug trafficker, and was subject to being moved again without warning; (2) part of a brick of marijuana was protruding from the car's front seat; and (3) a very strong odor of marijuana was coming out of a half-opened window on the passenger's side of the car.

[2] In *Coolidge v. New Hampshire, supra,* the Supreme Court held the automobile exception to be "simply irrelevant" to the facts before it, emphasizing (1) the suspect in the case knew beforehand that he was under investigation for a crime and had ample opportunity to destroy evidence; (2) during the arrest, the suspect had no access to the automobile; (3) the vehicle was not parked in such a place or manner as to attract undue attention; (4) the search did not involve contraband, stolen goods or weapons; and (5) there were no known confederates likely to remove the evidence. The *Connolly* court relied on these factors to set the parameters of the exigent circumstances exception as it would apply to the facts therein, noting that the crucial distinction in its case was the presence of confederates who would have had reason to search for and remove defendant's automobile.

exigent circumstances existed because the agents had had specific reason to believe that a confederate or acquaintance might return to move the car or remove the contraband.

This court relied heavily on the *Connolly* holding in *State v. Elliott, supra,* wherein we found sufficient exigency from the facts to uphold the warrantless search of defendant's vehicle. As in *Connolly,* defendant had been under surveillance for involvement in drug transactions. His arrest occurred as he was leaving his apartment building subsequent to making a sale to an informant. Aware of the police officers' presence around him and near his car, defendant threw a bag containing marijuana into the car and locked the door. Defendant was then arrested. Police procured the keys to the car from a female acquaintance of defendant and immediately unlocked the car to secure the bag. Sustaining the trial court's determination that the bag had been lawfully seized, we emphasized the following facts: (1) contraband was involved, and the police clearly had probable cause to believe that the bag contained contraband; (2) the bag was plainly visible from outside the vehicle, even though its contents were not; (3) the car was parked in an open apartment parking area; (4) the activity of defendant and the police had focused public attention on the car and the bag; and (5) others were present who were involved in or had knowledge of the drug dealings and thus "might have had more than a passing interest in the vehicle and its contents," 61 Haw. at 497, 605 P.2d at 934. We placed particular emphasis on the fact that defendant's likely confederates were not in custody, and that many others in the nearby apartment complexes who might have had an interest in the bag may have witnessed the arrest and activity near the car, leaving police no alternative but to search the car on the spot. *Cf. State v. Dorson, supra* (warrantless search of house and seizure of marijuana therein held unreasonable since defendant was arrested far from home out of public view and no confederates were alerted to the possibility of a search).

In contrast, the facts of this case do not rise to the same level of exigency to justify police action without prior judicial approval. Unlike *Elliott,* there is no evidence of police conduct or actions by defendant that might have focused any attention whatsoever on defendant's car, which was parked a good distance away from the scene of the arrest. Again unlike *Elliott,* the firearm in the present case was only barely protruding from under the front seat, and

would have been visible to the passerby only if he were using a flashlight and consciously searching the automobile's interior. In fact, the police themselves would have had no knowledge of the handgun's existence were it not for the telephone call they received informing them of the possibility of the same. Finally, defendant had not been acting in concert with others who might have had sufficient motivation to remove the weapon or the car. Defendant himself remained in police custody once arrested, unable to raise the requisite amount of bail, and therefore had no opportunity to gain access to his vehicle.

In short, the police, at the time of their warrantless seizure of the handgun, lacked specific, articulable grounds for believing that there was a foreseeable risk of the car's or weapon's removal before a search warrant could be obtained. That defendant's car was parked in an area generally regarded as a "high crime spot," when viewed in the context of the other facts, amounts to nothing more than support for a generalized fear that an unknown person may come along and take the evidence, which *Coolidge* strictly forbids. The police were thus bound to comply with the fourth amendment's command that a warrant be secured prior to the seizure of defendant's private property. The fact that defendant's arrest occurred in the early morning hours, making it inconvenient to secure a warrant, carries little weight in this jurisdiction as a reason to by-pass the fourth amendment. *See State v. Texeira,* 62 Haw. 44, 51, 609 P.2d 131, 136 (1980).