893 P.2d 159

STATE of Hawai'i, Plaintiff–Appellant,

v.

Gary MEYER, Defendant–Appellee.

No. 17728.

Supreme Court of Hawai'i.

April 11, 1995.

James M. Anderson, Deputy Pros. Atty., on the briefs, Honolulu, for plaintiff-appellant.

Todd A. Watanabe, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

MOON, Chief Justice.

In this interlocutory appeal, plaintiff-appellant State of Hawai'i (the prosecution) appeals from the findings of fact (FOF), conclusions of law (COL), and order granting, in part, and denying, in part, defendant-appellee Gary Meyer's motion to suppress evidence. The prosecution challenges the circuit court's suppression of a handgun seized by the police on the ground that no exigent circumstances were present to justify the warrantless seizure. For the reasons discussed herein, we hold that, where the evi-

dence in question was observed in "plain view," the presence of exigent circumstances is not required to justify a warrantless seizure. Accordingly, we reverse the decision of the circuit court and remand this case for further proceedings.

## I. BACKGROUND

At approximately 4:25 p.m. on August 24, 1992, Honolulu police officer Michael Lucas, who was traveling west on Farrington Highway, noticed a gray pickup truck traveling in the opposite direction. The truck had its four-way flashers engaged and its passenger side door open with a woman, later identified as Monica Luke, attempting to exit the moving vehicle. Officer Lucas made a U-turn and pulled the truck over to the side of the road. The male driver voluntarily exited the truck, approached officer Lucas, and identified himself as Gary Meyer. At the same time, Luke exited the truck and crossed Farrington Highway to a telephone booth. Shortly thereafter, Officer Scott Tamasaka and several other police officers arrived at the scene. During the investigation, Luke stated that Meyer had physically abused her; therefore, Meyer was advised that he was being arrested for abuse of a family or household member, a violation of Hawai'i Revised Statutes (HRS) § 709–906 (Supp. 1992).[1]

After his arrest, Meyer requested and received permission to move various items from the flatbed of his truck to the cab portion in order to secure the items. While

Meyer was moving his things, he and Luke began to argue. As a result, Meyer was handcuffed and escorted to one of the police cars. Meyer then "either asked the police to move his work tools into the front of the truck or gave the police the keys to secure the truck." FOF No. 5.

As Officer Tamasaka approached the driver's side door to secure the vehicle, he noted that the door was slightly ajar. Officer Tamasaka then observed, through the open door, "the butt end of a revolver on the floor [of the truck] under the outer left-hand corner of the driver's seat." FOF No. 8. He testified that nothing obscured his vision of the weapon and that the area was well lit because it was a sunny afternoon. Officer Tamasaka alerted the other officers to his discovery and instructed Officer Reginald Kaneda to remove the handgun. At that point, Meyer was informed that he was also under arrest for possession of a firearm.

Because Meyer's truck could not be properly secured due to either a faulty window or locking mechanism on the driver's side, one of the officers drove the truck to the Waianae police station. At the station, Meyer signed a "consent to search" form, agreeing to a full search of his truck. As a result of the search, the police recovered ammunition and marijuana. Meyer was charged with Place to Keep Pistol or Revolver, a violation of HRS §§ 134–6(b) and (d) (Supp.1992),[2] and Promoting a Detrimental Drug in the Third Degree, a violation of HRS § 712–1249(1) (1985).[3]

---

1. HRS § 709–906 provides in pertinent part that "[i]t shall be unlawful for any person, singly, or in concert, to physically abuse a family or household member."

2. HRS § 134–6 provides in pertinent part:

   (b) Except as provided in sections 134–5 and 134–9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or ex-

hibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

   ....

   (d) Any person violating this section by possessing, using or threatening to use a firearm while engaged in the commission of a felony shall be guilty of a class A felony. Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134–9 shall be guilty of a class B felony....

3. HRS § 712–1249(1) provides in pertinent part that "[a] person commits the offense of promoting a detrimental drug in the third degree if he

On August 16, 1993, Meyer moved to suppress, *inter alia*, the handgun on the ground that the warrantless search and seizure of his property violated the fourth amendment to the United States Constitution,[4] applicable to the states through the fourteenth amendment, and article I, section 7 of the Hawai'i Constitution.[5] The court denied Meyer's motion to suppress all items of evidence except the handgun. The court's suppression of the handgun seized by the police was based on its conclusion that no exigent circumstances were present to justify the warrantless search and, thus, the seizure was illegal. The prosecution's timely notice of appeal followed.

## II. *STANDARDS OF REVIEW*

█ A court's FOF are reviewed under the clearly erroneous standard, *Dan v. State*, 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994), and "will not be set aside on appeal unless they are determined to be clearly erroneous." *State v. Joyner*, 66 Haw. 543, 545, 669 P.2d 152, 153 (1983) (citations omitted). "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." *Dan*, 76 Hawai'i at 428, 879 P.2d at 533 (citation and internal quotations omitted); *see also State v. Nelson*, 69 Haw. 461, 469, 748 P.2d 365, 370 (1987).

█ A court's COL are reviewed under the right/wrong standard. *Dan*, 76 Hawai'i at 428, 879 P.2d at 533; *State v. Miller*, 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). "Under the right/wrong standard, we examine the facts and answer the question without being required to give any

weight to the trial court's answer to it." 4 Haw.App. at 606, 671 P.2d at 1040; *see also Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992).

## III. *DISCUSSION*

In granting Meyer's motion to suppress the handgun, the circuit court concluded:

2. Since the gun was visible to the police officer standing outside of the truck, it was in *plain view* and, thus, provided probable cause to arrest [Meyer] for possession of a firearm.

3. No amount of probable cause justifies the seizure of the gun absent exigent circumstances.

4. Since [Meyer] was already under arrest for abuse of family or household member, handcuffed, under control of the police, and the police had keys to the vehicle and were in the process of moving the vehicle to the police station, exigent circumstances did not exist.

5. Without exigent circumstances in this case, the seizure of the gun without a warrant was illegal.

COL Nos. 2 (emphasis added), 3, 4, and 5.

The prosecution contends that the observation and seizure of the handgun was proper under both the "open view" and the "plain view" doctrines. On the other hand, Meyer maintains that, as the circuit court concluded, neither doctrine would justify the warrantless seizure, absent exigent circumstances.

### A. *The Warrant Requirement and Its Exceptions*

█ Both the fourth amendment to the United States Constitution and article I, sec-

---

knowingly possesses any marijuana or any Schedule V substance in any amount."

4. The fourth amendment to the United States Constitution states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

5. Article I, section 7 of the Hawai'i Constitution states:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

tion 7 of the Hawai'i Constitution ensure that an individual's legitimate expectations of privacy will not be subjected to unreasonable governmental intrusions. *State v. Bonnell,* 75 Haw. 124, 136, 856 P.2d 1265, 1272 (1993). When a governmental intrusion does not invade an individual's legitimate expectation of privacy, "there is no 'search' subject to the Warrant Clause." *Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983). However, governmental agents are prohibited from searching through an individual's belongings at will. *See In re Jane Doe,* 77 Hawai'i 435, 439, 887 P.2d 645, 649 (1994). In order to search an area in which an individual has a reasonable expectation of privacy, government officials are required to obtain a search warrant to assure that such searches will be based on probable cause and be limited in their scope. "The basic purpose ... [of these constitutional provisions] is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Bonnell,* 75 Haw. at 136, 856 P.2d at 1272 (brackets in original and internal quotation marks omitted) (citing *Camara v. Municipal Court,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967)).

We have stated that, "[i]f anything is settled in the law of search and seizure, it is that a search without a warrant issued upon probable cause is unreasonable per se[.]" *State v. Fields,* 67 Haw. 268, 281, 686 P.2d 1379, 1389 (1984) (citations omitted); *see also State v. Propios,* 76 Hawai'i 474, 477, 879 P.2d 1057, 1060 (1994); *State v. Perham,* 72 Haw. 290, 292, 814 P.2d 914, 915, *reconsideration denied,* 72 Haw. 616, 841 P.2d 1074 (1991); *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, *reh'g denied,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971). However, we have also recognized that the warrant requirement is "subject ... to a few specifically established and well-delineated exceptions." *Fields,* 67 Haw. at 281, 686 P.2d at 1389 (citations and internal quotation marks omitted). "[T]hese exceptions provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior re-

course to a neutral magistrate." *State v. Clark,* 65 Haw. 488, 494, 654 P.2d 355, 360 (1982) (citation and internal quotation marks omitted); *see also State v. Ritte,* 68 Haw. 253, 257, 710 P.2d 1197, 1201 (1985) (probable cause and exigent circumstances); *Fields,* 67 Haw. at 283, 686 P.2d at 1383–84 (probationary status); *State v. Russo,* 67 Haw. 126, 137, 681 P.2d 553, 561 (1984) (consensual searches); *State v. Paahana,* 66 Haw. 499, 505–06, 666 P.2d 592, 597 (1983) (search incident to arrest); *Clark,* 65 Haw. at 498, 654 P.2d at 362 (preincarceration searches); *State v. Kapoi,* 64 Haw. 130, 140, 637 P.2d 1105, 1113 (1981) (open view); *State v. Faulkner,* 64 Haw. 101, 106–08, 637 P.2d 770, 774–75 (1981) ("automobile exception"); *State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980) (stop and frisk); *State v. Powell,* 61 Haw. 316, 603 P.2d 143 (1979) (plain view).

### B. *The Open View and Plain View Doctrines*

A "search" implies that there is an exploration for an item or that the item is hidden. *State v. Hanawahine,* 50 Haw. 461, 465, 443 P.2d 149, 152 (1968). However, neither factor is present in open view or plain view observations, and neither observation involves a search in the constitutional sense. *See generally* 69 Am.Jur.2d *Searches and Seizures* § 55 (1993). In other words, neither open view nor plain view observations involve an invasion of an individual's reasonable expectation of privacy. *Kapoi,* 64 Haw. at 140, 637 P.2d at 1113; *Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) (when object is in plain view, its observation does not violate any privacy interests); *State v. Kaaheena,* 59 Haw. 23, 28, 575 P.2d 462, 466 (1978) (in open view sighting, governmental observation of the item does not constitute a search in the constitutional sense).

This court, in *Kaaheena,* distinguished the two doctrines:

The open view doctrine is distinguishable from the visually similar, but legally distinct, plain view doctrine. In the plain view situation[,] the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of

privacy. The officer has already intruded, and, if his [or her] intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible.

In the open view situation, however, the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside [at] that which is knowingly exposed to the public. The object under observation is not within the scope of the constitution.

*Id.* at 28–29, 575 P.2d at 466–67 (internal quotation marks, internal citations, and footnote omitted) (emphasis in original).

Here, the circuit court employed the term "plain view"; however, it is unclear whether the plain view doctrine was actually applied. If a legitimate "plain view" observation was involved in this case, there would have been no exigency requirement, and the circuit court would have erred in its conclusion that exigent circumstances were necessary. *See infra* section C, *Plain View Seizure.* However, because the circuit court utilized the phrase "plain view" in its COL and the prosecution and Meyer advanced arguments under both doctrines, we briefly review the scope and meaning of each.

### 1. Open View

As noted above, in an open view sighting, a police officer observes something illicit from a public vantage point. There is no intrusion present because, in theory, the object or activity is something any member of the public could themselves observe. In *Bonnell,* this court noted that

we have held that[,] where the object observed by the police is in open view, it is not subject to any reasonable expectation of privacy[,] and the observation is not within the scope of the constitution.... In the open view situation, ... the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside [at] that which is knowingly exposed to the public.

*Bonnell,* 75 Haw. at 144, 856 P.2d at 1276 (internal quotation marks and citations omitted).

■ In legitimate open view sightings, the warrantless seizure of the evidence in question depends on whether the item is in a constitutionally protected area. If the evidence is not in an area where there is a reasonable expectation of privacy, that is, if it is located in a common space, such evidence is subject to seizure by the governmental agent who spots it, without the necessity of a warrant or exigent circumstances. "If a police [officer] sees probable evidence in open view in a constitutionally non-protected area, he [or she] may, of course, seize it[.] He [or she] seizes it because there is no constitutional provision to gainsay the seizure." *State v. Hook,* 60 Haw. 197, 201, 587 P.2d 1224, 1228 (1978) (citation omitted).

■ However, if the evidence in question is in open view in an area in which the evidence retains its constitutional protection, a warrant is required or exigent circumstances must exist before the object may be seized. "Visibility of contraband within constitutionally protected premises is not enough to justify entry and seizure without a warrant." *Id.* at 202, 587 P.2d at 1228. In attempting to define "exigent circumstances," this court in *Clark* stated:

[although] the term "exigent circumstances" is incapable of precise definition, generally speaking ... it may be said to exist when the demands of the occasion reasonably call for an immediate police response. More specifically, it includes situations presenting an immediate danger to life or of serious injury or an immediate threatened removal or destruction of evidence. However, the burden, of course, is upon the government to prove the justification....

*Clark,* 65 Haw. at 494, 654 P.2d at 360 (internal citations and brackets omitted).

In *Kapoi,* following a valid arrest and after the booking process, the police returned to the scene of the arrest where the defendant's vehicle was parked. The police had received a call while at the station that, prior to the defendant's arrest, he had been carrying a handgun. Because of the darkness of the early morning hour, the officer surveyed the interior of the vehicle with the aid of a

flashlight through the vehicle's window. The officer observed the butt of a handgun protruding from a holster that was on the floor of the vehicle. The officer returned to the station, retrieved the keys for the defendant's vehicle, and, upon returning to the scene, opened the locked door and seized the handgun.

Acknowledging the distinction between open view and plain view, the *Kapoi* court determined that the handgun was in open view because the officer was "on the outside looking inside [at] that which ... [was] knowingly exposed to the public." *Kapoi*, 64 Haw. at 140, 637 P.2d at 1113 (citation omitted). The court stated:

> Hence, his observation of the weapon was not subject to constitutional considerations. Furthermore, the fact that the visual inspection was aided by a flashlight did not convert the scan of the vehicle's interior into a constitutionally regulated "search."
>
> ... But even the "open view" of possible contraband, without more, furnished no basis for its seizure without a warrant. For "no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" Thus, we are compelled to examine the circumstances in which the officer found himself to determine whether the exigencies of the moment were such as to sustain his decision to seize the gun without a judge's concurrence.

*Id.* at 140–43, 637 P.2d at 1113–14 (internal citations and footnotes omitted). In concluding that the seizure of the handgun did not breach constitutional guarantees against unreasonable searches and seizures, the court described the circumstances that it believed demonstrated the exigency of the situation:

> The car was exposed to public view; there was a foreseeable risk that the evidence it sheltered might be removed before a warrant could be sought some hours later. Moreover, the object in question was a firearm likely to draw the attention of possible intruders in a neighborhood considered a "trouble spot" by the police. ... [T]he threat to public safety engendered by the situation also causes us to consider the officer's actions reasonable.

*Id.* at 143, 637 P.2d at 1115 (citation omitted).

## 2. Plain View

■ The United States Supreme Court, in *Coolidge*, held that three factors are required to merit a legitimate plain view observation: (1) prior justification for the intrusion; (2) inadvertent discovery; and (3) probable cause to believe the item is evidence of a crime or contraband. 403 U.S. at 465–473, 91 S.Ct. at 2037–2042; *see also United States v. Limatoc*, 807 F.2d 792, 795 (9th Cir.1987). This court has implicitly adopted all three of the *Coolidge* requirements in *Powell*.[6]

In *Powell*, a police officer observed a vehicle at night traveling at an unusually slow rate of speed, without taillights. Upon approaching an intersection, the vehicle came to a stop ten to fifteen feet short of the stop line, and, before negotiating a turn, remained stopped for approximately ten seconds. Believing the driver was either lost, experiencing mechanical problems, or intoxicated, the officer pulled the vehicle over. The driver voluntarily exited the vehicle and appeared to be intoxicated. Although the driver admitted that he had taken "valium," he handed the officer a prescription bottle labeled "thorazine." The officer placed the driver under arrest for driving under the influence of drugs. Following the arrest, another officer

---

6. We note that in *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), the United States Supreme Court eliminated inadvertance as a requirement of a plain view sighting. However, because we continue to believe that the factor of inadvertence is necessary for the protection of our citizens in order to foster the objective of preventing pretextual article I, section 7 activity, we decline to follow *Horton* to the extent it eliminated inadvertence as a requirement of a plain view sighting. As the dissent by Justice Brennan, joined by Justice Marshall, noted,

> [t]he rationale behind the inadvertent discovery requirement is simply that we will not excuse officers from the general requirement of a warrant to seize if the officers know the location of evidence, have probable cause to seize it, intend to seize it, and yet do not bother to obtain a warrant particularly describing that evidence.

*Id.*, 496 U.S. at 144–45, 110 S.Ct. at 2312.

appeared at the scene to help take the driver into custody. Upon returning to the defendant-driver's vehicle to secure it, the arresting officer, with the aid of his flashlight, observed a spoon with a crystallized substance in it, which he had noticed when the driver initially exited the vehicle. The spoon was seized along with a hypodermic needle and a vial containing a clear liquid, which were observed under the driver's seat.

This court held that the stop was reasonable and that

> [t]he officer's observations of the spoon—at the time [the defendant-driver] alighted from his car and at the time the crystalline substance was detected—were both inadvertent and both occurred while the officer had a right to be at his vantage point. Therefore, the warrantless seizure of the spoon and its subsequent admission at trial could be justified under the "plain view" doctrine. . . .
>
> Although we believe that the search beneath the driver's seat and the seizure of the items found there cannot, unlike the spoon, be justified under the "plain view" doctrine, we nevertheless hold that these warrantless intrusions were not unreasonable under the circumstances present.

*Id.* 61 Haw. at 325–26, 603 P.2d at 150 (citations omitted).

■ Keeping in mind the distinction between the open view and plain view doctrines, we now turn to the question whether the sighting of the handgun by Officer Tamasaka was an open view or plain view observation. Under the facts of this case, we agree with the circuit court that Tamasaka's sighting of the handgun was a plain view, and not an open view, observation because the firearm was not "knowingly exposed to the public." *Kapoi,* 64 Haw. at 140, 637 P.2d at

1113. As Meyer notes in his answering brief, "[g]iven the position of the gun as testified to by the [prosecution's] witnesses, a person passing by the truck would not be able to see it by merely looking into the truck from a window. In addition, the gun would not be visible at all unless the driver's door was open." We agree.

Meyer opened the driver's door while attempting to secure his vehicle by removing items from the bed of the truck to the cab portion of the vehicle in the presence of the police. When Meyer and Luke began to argue, Meyer was escorted to a police car, and the driver's door was left slightly ajar. Based on the evidence, no member of the public could reasonably have been in the position of Officer Tamasaka when he observed the handgun as he approached Meyer's truck to secure it.[7] The record indicates that: (1) Officer Lucas' initial stop of Meyer's truck was justified, *see* COL No. 1; (2) Officer Tamasaka's vantage point, from which he observed the handgun, was due to Meyer's request that the police move his tools to the cab of the truck or Meyer's giving the keys to the police in order to secure the truck, *see* FOF No. 5; and (3) the sighting of the handgun "provided probable cause to arrest [Meyer] for possession of a firearm." COL No. 2. And, because the record persuades us that Officer Tamasaka's discovery was inadvertent, we hold that the plain view doctrine is applicable.

### C. *Plain View Seizure*

■ As previously noted, Meyer argues that, regardless of whether the open view or plain view doctrine applies, a showing of exigent circumstances is necessary to justify a warrantless seizure of evidence under either doctrine. In support of his position regarding plain view seizures, Meyer points

---

7. FOF Nos. 6 and 7 state:

> 6. After Defendant was placed under arrest for abuse of family or household member, the police attempted to secure the truck.
> 7. In the process of securing the truck, Officer Tomosaka [sic] noticed that the driver's side door was slightly ajar.

FOF No. 17, however, states that "[a]t the time that the gun first became visible to the police officers, Defendant was already under arrest for abuse of family or household member, hand-cuffed, and under the control of the police and the police had the keys to the vehicle and *were in the process of moving the vehicle to the police station.*" (Emphasis added.) To the extent that FOF No. 17 seems to indicate that the police were in the process of moving the vehicle to the police station when the gun was first observed, which contradicts FOF Nos. 6 and 7, we hold that, based on the record, that portion of FOF 17 to be clearly erroneous.

to the following language from *Coolidge* that "[p]lain view *alone* is never enough to justify the warrantless seizure of evidence." *Coolidge*, 403 U.S. at 468, 91 S.Ct. at 2039 (emphasis in original). Meyer's misapprehends the *Coolidge* analysis. Under the plain view doctrine, the requirement of exigent circumstances may be an issue where, because of the warrantless intrusion, the police were placed in plain view of the evidence. However, once the intrusion is justified, there is no requirement of exigency to seize evidence in plain view.

■ The Supreme Court in *Coolidge* stated that, "[w]here the *initial intrusion* that brings the police within plain view of ... an article *is supported ... by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate*." *Id.* at 465, 91 S.Ct. at 2037 (emphasis added). Thus, the portion of *Coolidge* cited to by Meyer, when read in context, stands only for the proposition that without prior justification for their presence, police officers may not enter constitutionally protected premises in order to seize evidence in plain view. This interpretation has been upheld in other cases by the Supreme Court as well as by other courts:

> The context in which the [*Coolidge* ] plurality used the phrase, ["plain view *alone* is never enough to justify the warrantless seizure of evidence,"] however, indicates that it was merely a rephrasing of its conclusion ... that in order for the plain-view doctrine to apply, a police officer *must be engaged in a lawful intrusion or must otherwise legitimately occupy the position affording him a "plain view."*

*Texas v. Brown*, 460 U.S. 730, 737 n. 3, 103 S.Ct. 1535, 1540 n. 3, 75 L.Ed.2d 502 (1983) (emphasis in original).

The Court in *Brown* explained that " 'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Brown*, 460 U.S. at 738, 103 S.Ct. at 1541. In *Horton*, the Court, in stating that objects properly in plain view may be subject to seizure despite the lack of a warrant, noted that "the seizure of an object in plain view does not involve an intrusion on privacy." *Horton*, 496 U.S. at 141–42, 110 S.Ct. at 2310. In *Minnesota v. Dick-*

*erson*, — U.S. —, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Court stated that, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Id.* at — – —, 113 S.Ct. at 2136–37; *see also Soldal v. Cook County*, — U.S. —, — – —, 113 S.Ct. 538, 545–46, 121 L.Ed.2d 450 (1992); *Maryland v. Buie*, 494 U.S. 325, 330, 110 S.Ct. 1093, 1096, 108 L.Ed.2d 276 (1990); *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980); *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 2413–14, 57 L.Ed.2d 290 (1978).

In *G & G Jewelry, Inc. v. City of Oakland*, 989 F.2d 1093 (9th Cir.1993), the Ninth Circuit Court of Appeals, relying on *Brown*, stated that "*there is no additional requirement of exigency for the seizure of property that is in plain view, provided that the police officer's presence on the property is lawful and the incriminating character of the evidence is immediately apparent.*" *G & G Jewelry*, 989 F.2d at 1100–01 (emphasis added).

Although this court has yet to articulate specifically that warrantless plain view seizures can be justified without the presence of exigent circumstances, our cases have clearly implied that such seizures are legitimate. For example, in *Powell*, as previously described, after determining that the officer's initial stop of Powell was justifiable, this court held that the officer's actions were constitutionally permissible, and "the warrantless seizure of the spoon and its subsequent admission at trial would be justified under the plain view doctrine." *Powell*, 61 Haw. at 325, 603 P.2d at 150 (internal quotation marks omitted).

In *State v. Ogata*, 58 Haw. 514, 572 P.2d 1222 (1977), the police received a complaint that the Church of Scientology had received a threatening phone call. While responding to the complaint, the police noticed a suspicious vehicle, with two men inside it, in the vicinity of the Church. After learning that the vehicle was registered to Ogata, who had been named by the complainant as the sus-

pected caller, police officer Tadly pulled the automobile over. After speaking to the two men, Officer Tadly ordered them both out of the vehicle in order to verify their identification and administer a sobriety test to the driver. While Officer Tadly was so engaged, another police officer, Officer Foley, "looked into the vehicle from the outside and saw the sheathed sword-cane. Upon opening the door to secure the instrument, he saw the [wooden] knuckles on the vehicle floor." *Ogata,* 58 Haw. at 516, 572 P.2d at 1224. Holding that the seizure of both weapons was proper, this court stated that "[t]he stop having been proper, the seizure of the sword-cane, which was in plain view, and the recovery of the knuckles were also proper." *Id.* at 517, 572 P.2d at 1224; *see also State v. Barnett,* 68 Haw. 32, 34, 703 P.2d 680, 682 (1985) ("[A] plain view rationale would support a warrantless seizure where police who are lawfully on constitutionally protected premises inadvertently come across evidence of a crime."); *State v. Madamba,* 62 Haw. 453, 456, 617 P.2d 76, 78 (1980) ("[A] firearm which is in plain view from the outside of an automobile may properly be seized."); *Hook,* 60 Haw. at 202, 587 P.2d at 1228 ("Where contraband comes into the view of an officer during the course of a permissible entry into constitutionally protected premises, the 'plain view' doctrine may permit its seizure."); *State v. Stachler,* 58 Haw. 412, 417, 570 P.2d 1323, 1327 (1977) ("[I]f the original intrusion is justified, ... objects sighted in plain view will be admissible so long as the view was inadvertent."); *Kaaheena,* 59 Haw. at 28, 575 P.2d at 466 ("The officer has already intruded, and, if his intrusion is justified, the objects in plain view ... will be admissible.").

In valid plain view observations, the intrusion has already lawfully occurred, and the seizure of the evidence in question is an extension of the exception to the warrant requirement. Therefore, as stated by the Supreme Court, " '[p]lain view' is perhaps better understood, ... not as an independent 'exception' to the Warrant Clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." *Brown,* 460 U.S. at 738–39, 103 S.Ct. at 1541; *see also G & G Jewelry,* 989 F.2d at 1100.

 Based on the foregoing, we hold that, where a governmental agent is engaged in a lawful intrusion and inadvertently observes evidence of a crime, the seizure of such evidence does not require any further constitutional protection.

## IV. *CONCLUSION*

Because we hold that the seizure of the handgun in this case was not in violation of Meyer's federal or state constitutional rights, we need not address the prosecution's other asserted errors. Accordingly, we reverse the order of the circuit court granting the suppression of the handgun at issue and remand this case for further proceedings.